### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| REKEA PHILLIPS, | ) |
|             Plaintiff, | ) ) ) |
| v. | ) ) Case No. 23-cv-1381-JES-JEH |
| PEORIA HOSPITALITY, LLC, | ) ) ) |
|             Defendant. | ) ) |

### ORDER

On October 10, 2023, Plaintiff filed a Complaint alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the amended Civil Rights Act of 1991, 42 U.S.C. § 1981a. Plaintiff alleged that her former employer, Peoria Hospitality, LLC, ("Hospitality"), subjected her to race-based discrimination and race-based harassment. She also alleges that Hospitality is governed under Title VII as, at all relevant times, it employed at least fifteen individuals as required under § 2000e(b). (Doc. 1 at 2).

The record establishes that Plaintiff served Defendant with process on October 11, 2023, through personal service on Devanshi Patel, "a person authorized to accept service."[1] (Doc. 5 at 2). Despite this, Defendant did not appear or respond. On November 20, 2023, on Plaintiff's motion, the Court granted an Order of Default. Plaintiff now files a Motion for Entry of a Default

---

[1] While Dilip Patel is identified in the summons and on the Illinois Secretary of State website as the Peoria Hospitality, LLC registered agent, see Business Entity Search (ilsos.gov), a corporation may be served "'by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.'" . . . [or] "by 'following state law for serving a summons in the state where the district court is located or where service is made.'" *Acosta v. Ashley's Quality Care, Inc.*, No. 16-5393, 2018 WL 1621021, at *2 (N.D. Ill. Apr. 4, 2018) (quoting Fed. R. Civ. P. 4(h)(1) & (e)(1)). "Illinois law provides that '[a] private corporation may be served ... by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State.'" *Id*. (quoting 735 ILCS 5/2-204(1)).

Judgment, (Doc. 7), requesting that the Court award $52,156.59 in total damages and order discovery under Fed. R. Civ. P 69(A) to aid in the collection and enforcement of the default judgment. For the reasons indicated herein, Plaintiff's (Doc. 7) is GRANTED.

## STANDARD

"Federal Rule of Civil Procedure 55 creates a two-step process for a party seeking default judgment. First, the plaintiff must obtain an entry of default from the Clerk." *Barrett v. Invictus Real Estate Group, LLC*, No. 20-02275, 2022 WL 1499725, at *1 (S.D. Ind. May 11, 2022) (citing *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016)); Fed. R. Civ. P. 55(a). A clerk's entry of default "'is recognition of the fact that a party is in default for a failure to comply with the rules' and 'is an interlocutory step taken in anticipation of a final default judgment under Rule 55(b)." *Dvore v. Casmay*, No. 06-3076, 2008 WL 4427467, at *4 (N.D. Ill. Sept. 29, 2008). The effect of entry of default is that the complaint's well-pleaded allegations relating to liability are taken as true. *Barrett*, 2022 WL 1499725, at *1 (citing *VLM*, 811 F.3d at 255).

An entry of default will not determine the parties' rights as "[t]hat role is reserved for a default *judgment*." *Id*. See *Zhu Zhai Holdings Ltd. v. Ivankjovich*, No. 20-4985, 2021 WL 3634013, at *3 (N.D. Ill. Aug. 17, 2021), *aff'd sub nom. Zhu Zhai Holdings Ltd. v. Ivankovich*, No. 21-3038, 2022 WL 1439396 (7th Cir. May 6, 2022) (emphasis in original). "'Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks.'" *Id*. (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)). "'Simply put, plaintiffs must still prove damages after default has been entered.'" *Id*. (citing *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012)).

The Court need not conduct an evidentiary hearing to determine damages if the amounts "are capable of easy computation." *Id*. (citing *Domanus v. Lewicki*, 742 F.3d 290, 304 (7th Cir. 2014); 10A Charles Alan Wright, *et al.*, Federal Practice & Procedure § 2688 (4th ed. 2020); Fed.R.Civ.P. 55(b)). *See Barrett*, 2022 WL 1499725, at *1 (determining the amount of damages without a hearing where they could be calculated from "definite figures" in evidence) (citing *Villanueva v. Falcon Const. Co.*, No. 09-107, 2010 WL 1577277, at *1 (N.D. Ind. Apr. 14, 2010)). *See also Pharmerica Midwest, LLC v. Bravo Care of Galesburg, Inc.*, No. 20-04023, 2021 WL 1061970, at *2 (C.D. Ill. Mar. 19, 2021) (determining a hearing was not necessary where "[t]he amounts requested are 'capable of ascertainment' from documentary evidence or affidavits."). The Plaintiff here seeks recovery in the form of back pay, compensatory damages for emotional distress, pre and post-judgment interest, costs, and attorneys' fees.

Under Title VII, Plaintiff may recover equitable damages in the form of back pay or reinstatement, or front pay in lieu of reinstatement. *EEOC v. Ilona of Hungary, Inc*., 108 F.3d 1569 (1997); 42 U.S.C § 2000e-5. Title VII also allows for punitive damages except as against a government, governmental agency, or political subdivision."[2] Additionally, Title VII provides for pre and post-judgment interest[3], as well as attorney's fees. *See* § 20003-5(k). The 1991 amendment to the Civil Rights Act amendment now allows a claim for compensatory damages. *See* §1981a(b)(2); *Gedmin v. N. Am. Safety Products, Inc.*, No. 08-0337, 2010 WL 4539447, at *1 (N.D. Ill. Nov. 3, 2010) ("'With the passage of the Civil Rights Act of 1991, a plaintiff also may recover compensatory damages[.]'") (quoting *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F. 3d 1014, 1031 (7th Cir. 2003) Compensatory damages under § 1981a also

---

[2] *Cleaves v. City of Chicago*, 68 F. Supp.2d 963, 969 (N.D. Ill. 1999).
[3] *Frey v. Hotel Coleman*, 903 F.3d 671, 682 (7th Cir. 2018).

include recovery for emotional distress. *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 484 (7th Cir. 2003).

Compensatory damages, however, "are subject to limitations or 'caps' based on the size of the employer." *Gedmin*, 2010 WL 4539447, at *1 (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 119 2002)); *see* § 1981a(b)(3). S*ee also Gracia v. Sigmatron Int'l, Inc.*, 102 F. Supp. 3d 983, 992 (N.D. Ill. 2015) ("'The purpose of placing a constitutional ceiling on punitive damages is to protect defendants against outlandish awards[.] ... That purpose falls out of the picture when the legislature has placed a tight cap on total, including punitive, damages and the courts honor the cap.'") (quoting *Lust v. Sealy, Inc.*, 383 F.3d 580, 590–91 (7th Cir. 2004)).

The Plaintiff here does not reveal the number of individuals employed by Hospitality but her $15,000 compensatory damages request is well within the $50,000 maximum monetary liability for the smallest subset of employers, those with 14 to 101 employees.[4]

---

[4] Section 1981a(b)(3):

**Limitations**

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party--

    **(A)** in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

    **(B)** in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and

    **(C)** in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and

    **(D)** in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

**Back Pay**

Plaintiff requests back pay as part of her damages. There is "a strong presumption" in favor of an award for back pay. *Heyne v. Nick's Am. Pancake & Cafe, Inc.*, No. 11-305, 2013 WL 6047553, at *3 (N.D. Ind. Nov. 15, 2013) (quoting *Ilona of Hungary*, 108 F.3d at 1579 (citations omitted). Plaintiff has the burden of proving the back pay owed and this can be done by "'measuring the difference between actual earnings for the period and those which she would have earned absent the discrimination by defendant.'" *Id.* at *3 (quoting *Horn v. Duke Homes*, 755 F.2d 599, 606 (7th Cir.1985) in turn quoting *Taylor v. Philips Indus., Inc.*, 593 F.2d 783, 786 (7th Cir. 1979)). In *Heyne*, the court computed the back pay by multiplying the plaintiff's average weekly wage by the number of weeks she missed before finding comparable work. *Id.* at *4. Here, Plaintiff has provided a sworn affidavit attesting that she earned $28.62 per hour and worked 40 hours per week. Plaintiff attests that she was off for 24 weeks for a total of $27,475.20 owed.  (Doc. 8-1 at 2-3). The Court, considering the presumption that back pay will be awarded, finds that amount reasonable.

**Pre-Judgment Interest**

Plaintiff requests $2,335.39 in pre-judgment interest calculated as 8.5% of the outstanding back pay amount. "In general, whether and how to award prejudgment interest lies in the discretion of the district court, although there is a presumption in favor of granting such interest." *See Hotel Coleman*, 903 F.3d at 672 (internal citations omitted). The goal of Title VII "is to make a plaintiff whole following violations of a federal statute. Prejudgment interest restores a plaintiff to the position she would have been in but for the violation. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay." *Id.* at 682 (quoting *Gorenstein Enter., Inc. v. Quality Care—U.S.A., Inc.*, 874 F.2d 431, 436 (7th Cir.

1989)). An award of pre-judgment interest "is designed to ensure that a party is fully compensated for its loss." *Hill v. City of Hammond, Indiana*, No.10-393, 2023 WL 372094, at *1 (N.D. Ind. Jan. 24, 2023) (quoting *Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003)).

Pre-judgment interest may be calculated by multiplying the prime rate for the period in question by Plaintiff's average earnings. *Hines v. JBR Trucking LLC*, No.18-2159, 2020 WL 1429907, at *4 (C.D. Ill. Mar. 24, 2020). On May 8, 2023, Plaintiff was told she would be terminated. Plaintiff does not identify the actual dates on which she was unemployed but claims, generally, that she was off for 24 weeks. (Doc. 8 at 4). The prime rate from May through November 2023 ranged from 8.23% – 8.50% and was consistently at 8.5% in August, September, October, and November 2023.[5] This is enough to support the request for $2,335.39 in pre-judgment interest at the calculated 8.5% rate.

**Compensatory Damages**

As noted, Plaintiff requests compensatory damages for the emotional distress she has experienced. *See Hines*, 2020 WL 1429907, at *4 ("Victims of intentional discrimination prohibited by Title VII may recover compensatory damages for 'emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.'") (citing § 1981A(b)(3)). The Seventh Circuit has warned that compensatory damages awarded under Title VII are not to be "monstrously excessive"; that there must be "a rational connection between the award and the evidence," and the amounts must be "roughly comparable to awards made in similar cases." *Lampley*, 340 F.3d at 483–84; *Equal Emp't Opportunity Comm'n v. Autozone, Inc.*, 707 F.3d 824, 833 (7th Cir. 2013).

---

[5] Prime Rate History (Monthly) (fedprimerate.com). Last visited January 23, 2024.

Plaintiff attests that she was terminated from her position, that her manager regularly made racist comments toward her, racially harassed her, insinuated that her job should have been held by a Caucasian, held Plaintiff and other African American employees to a higher standard, and did not provide herself and other African American employees the same support provided to Caucasian employees. Plaintiff attests that the racially-based harassment and discrimination have caused her to suffer greatly and have deeply affected her mental state. (Doc. 8-1, at 3). Plaintiff has provided a list of recent discrimination case verdicts and settlements to support that the requested $15,000 is comparable. (Doc. 8-2). The cases she provides deal with sexual rather than racial discrimination, some involving unwanted touching. While these are allegations might be considered more egregious than those asserted here, the published awards and verdicts are also correspondingly higher than that requested here.

The Court finds that Plaintiff has sufficiently established a recoverable injury as a result of the emotional distress caused by the racial discrimination. *See EEOC v. HCS Med. Staffing, Inc.*, 2012 WL 529593, at * 3 (E.D. Wis. Feb. 17, 2012) (awarding the statutory maximum as compensatory damages based on plaintiff's affidavit testimony demonstrating emotional distress). *See Hines*, 2020 WL 1429907, at *4 (awarding $50,000 in compensatory damages where "[t]he circumstances leading up to Defendants' discriminatory termination of Plaintiff were inherently humiliating and caused Plaintiff substantial emotional distress."). She has also sufficiently established that the requested award is reasonable. *Lampley*, 340 F.3d at 483– 84. The Court hereby awards Plaintiff $15,000 in compensatory damages for the emotional distress alleged.

**Attorney's Fees and Costs**

Plaintiff seeks attorneys' fees and costs, providing the affidavit of counsel, Chad W. Eisenback. Mr. Eisenback attests that he is a duly licensed attorney who was been practicing employment law for three years. Mr. Eisenback charges an hourly rate of $475 in these cases. (Doc. 8-3). In addition, several paralegals have worked on this file at the rate of $195 per hour. Counsel also indicates that a filing clerk whose time is billed at $125 per hour worked one- half-hour on this case. He attests that the total fees amount to $6864.00, with an additional $482 in costs for the filing and serving of the complaint. *Id*. at 2-3. See billing chart reproduced below:

| Name of Attorney/Paralegal/Law Clerk | Time Spent | Rate | Total |
|---|---|---|---|
| Chad W. Eisenback (Attorney) | 12.8 | $475.00 | $6,080.00 |
| Mohammed O. Badwan (Attorney) | 0 | $475.00 | $0 |
| Jennie Hurlbut (Paralegal) | 2.3 | $195.00 | $448.50 |
| Danielle Chapman (Paralegal) | 0.6 | $195.00 | $117.00 |
| Ashley Feeney (Paralegal) | 0.3 | $195.00 | $58.5 |
| Kevin Gilman (Filing Clerk) | 0.5 | $125.00 | $62.50 |
| Sarah Rochford (paralegal) | 0.4 | $195.00 | $78.00 |
| Cristian Paez (paralegal) | 0.1 | $195.00 | $19.50 |
| **Total** | | | $6,864.00 |

A court has an independent obligation to ensure all requested fees are reasonable. *Herrera v. Grand Sports Arena, LLC*, No. 17-0452, 2018 WL 6511155, at *2 (N.D. Ill. Dec. 11, 2018) ("'[a] district court has an independent obligation to scrutinize the legitimacy of * * * [fee] submission[s].'") (quoting *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 646 (7th Cir. 1995) In reviewing the reasonableness of attorneys' fees in a Title VII case, the courts often use the lodestar approach. *See Sommerfield v. Knasiak*, No. 08-3025, 2021 WL 5795303, at *1 (N.D. Ill. Dec. 7, 2021), *aff'd*, 22-1100, 2023 WL 4623887 (7th Cir. July 19, 2023). The lodestar approach enjoys a strong presumption of reasonableness. *Id.* (citing *Perdue v. Winn ex rel. Kenny A.*, 559

8

U.S. 542, 553–54 (2010); *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 639 (7th Cir. 2011)). The lodestar amount is determined by "multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation." *Id*. (citing *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018) (citation omitted). This amount may be adjusted downward for "'only partial or limited success'" or upward for "'[e]xtraordinarily good results.'" *Herrera*, 2018 WL 6511155, at *3 (N.D. Ill. Dec. 11, 2018) (internal citations omitted).

"'The Seventh Circuit has defined a reasonable hourly rate as one that is derived from the market rate for the services rendered.'" *Pable v. Chicago Transit Auth.*, No.19-7868, 2023 WL 2333414, at *43 (N.D. Ill. Mar. 2, 2023) (quoting *Melikhov v. Drab*, No. 16-9332, 2018 WL 3190824, at *3 (N.D. Ill. May 21, 2018). "The best evidence of the market rate is the amount the attorney actually bills for similar work[.]" *Id*. (quoting *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014)). Here, counsel has provided an uncontested affidavit attesting that he bills at $475.00 per hour. This appears reasonable. *See Herrera v. Grand Sports Arena, LLC*, No. 17-0452, 2018 WL 6511155, at *3 (N.D. Ill. Dec. 11, 2018) (approving $475 per hour rate for a law firm partner); *Hines*, 2020 WL 1429907 at *6, (finding that a $500 hourly fee for an attorney practicing in the Central District of Illinois was "on the higher end" but still "in line with rates that have recently been approved in this District . . .")

"The party seeking attorneys' fees also bears the burden of proving the reasonableness of the number of hours worked." *Id*. (citing *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 518 (7th Cir. 1993)). *See id*. "[h]ours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." (quoting *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004)). Here, counsel spent 12.8 hours on this case. Staff paralegals spent an additional 3.7 hours and a filing clerk one-half hour of time for a total of 17 hours of attorney and staff time.

9

This, too, seems reasonable. *See Herrera*, where in 2018, the court determined that paralegal time billed at $150 an hour was reasonable. *Id*. at *3.

**Post-Judgment Interest**

Plaintiff seeks post-judgment interest for the period between the entry of the award and the time the judgment, including attorneys' fees and costs, is paid. *See Martinez v. Nationwide Capital Services, LLC*, No. 22-00622, 2022 WL 9461889, at *2 (S.D. Ind. Oct. 13, 2022) ("'a prevailing plaintiff in federal court is automatically entitled to postjudgment interest'") (quoting *Miller v. Artistic Cleaners*, 153 F.3d 781, 785 (7th Cir. 1998). 28 U.S.C. § 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," to be "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding.[6]the date of the judgment." Such "[i]nterest shall be computed daily to the date of payment ... and shall be compounded annually." § 1961(b). As this Court awards money damages, it will award post-judgment interest accruing at the statutory rate prescribed in § 1961.

**Rule 69(A) Discovery**

Plaintiff also requests an opportunity to conduct discovery under Rule 69(A) to aid in collection of the Judgment. Federal Rule of Civil Procedure 69(a) provides:

> In aid of the judgment of execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

---

[6] Misplaced period contained in the original.

As a result, Plaintiff "has a choice of whether to utilize the federal discovery rules, or whether to proceed in accordance with the post-judgment discovery practice of the forum state." *OHM Res. Recovery Corp. v. Indus. Fuels & Res., Inc.*, 90-511, 1991 WL 146234, at *2 (N.D. Ind. July 24, 1991) (citing *Evans v. Chicago Football Franchise Ltd.,* 127 F.R.D. 492, 493 (N.D.Ill. 1989)). Here, as in *OHM*, Plaintiff chooses to proceed under the federal discovery rules. As a result, her request for Rule 69(a) discovery is granted and she is "free to utilize any of the discovery devices provided in Rules 26 through 37 of the Federal Rules of Civil Procedure." *Id*.

**Conclusion**

Accordingly, Plaintiff's Motion for Default Judgment and for discovery under Rule 69(A) (Doc. 7), is GRANTED. Defendant is liable as a matter of law as to all the causes of action alleged in the complaint, and Plaintiff is awarded total damages of $52,156.59 plus post-judgment interest accruing at the statutory rate prescribed in 28 U.S.C. § 1961. This award reflects compensation for the following: back pay of $27,475.20; pre-judgment interest of $2,335.39; compensatory damages for emotional distress in the amount of $15,000; attorneys' fees of $6,864.00; and costs of $482.

The Clerk is directed to enter judgment and close the case. Final Judgment under Rule 58 will enter separately.

ENTERED this 29th day of January, 2024.

s/James E. Shadid
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE